Good almost afternoon, your honors. Jason Carr appearing on behalf of Appellant Petitioner Abraham Cruzado. I intend, with court's leave, to reserve a portion of my time for rebuttal. The position of the parties in this matter are fairly crystallized. The state would hold up the plea agreement and the plea canvas in this matter as an insurmountable aegis, a shield to withstand Cruzado's post-conviction challenge. And the state is not irrational in that litigation position. The plea canvas and the plea agreement are a significant barrier in this matter, but it's not an insurmountable barrier. Our position would be that this plea dies a thousand deaths from the various slings and arrows, the other factual underpinnings and currents that were attended to this plea. This is a truly unique case in that there are a lot of factors, a lot of coercive factors, a lot of legitimate reasons for Cruzado to his initial instincts against his initial desires. And I'd like to briefly detail them for the court. One theme of this matter is Cruzado Let me begin by another, first an overall attack. What does it take when you have a good plea colloquy like you do here, I mean a sound colloquy, there's no doubt about that. What do you think it takes? How ought we to write a decision saying the colloquy was perfectly fine, but we aren't going to accept that as a voluntary plea because what? You would need substantial evidence of extra record coercion and inducement. You would need facts outside of the record that would imprint within a reasonable mind, a reasonable criminal defendant, a reasonable reason for entering a plea against his wishes, an involuntary plea. In this case, aside from all the other factors, there are two key factors that the court should look at. The first is the evidence that his wife was threatened with perjury if she were to take the stand on his behalf. His wife was a key witness in this case. In fact, as she had repeated before this case went to trial, she had spoken with the prosecutor and told the prosecutor an exculpatory version of facts here that she discovered that Cruzado was having an affair with this woman. She left him because of that fact. Indeed, despite the prosecutor's attempts to dissuade her from that notion, partly by telling her things that weren't true, she stuck fast to that story. Her testimony was crucial to this trial. Mr. Robart has a question. I'm sorry. Counsel, it seems to me that we're reviewing the district court's decision. If we accept your statement a moment ago, it puts us in a position of the defendant in this circumstance having an informed colloquy with the district court, and the answers that he's given are deemed to be untruthful. We're not there. I mean, the district court judge has to rely upon what he hears at the time. These events are all circumstances that have arisen by then, and yet it seems, in effect, that your client's lack of candor with the court you would excuse for some reason that I'm missing. Well, here's one crucial fact that the Court needs to look at. As this Court talks about in Anderson, that when the coercion comes from the bench itself, that we have to take the defendant's statement that the plea wasn't coerced with a little more of a critical eye than we normally would. In this case, there was an allegation by Cruzado that, incidentally, there's never been an actual factual finding on the State or Federal record that this accusation did not occur, or whether it did, that the judge told his attorney in an in-chambers conference when this plea was being negotiated during the second day of trial, that if Mr. Cruzado did not take this plea, he would, quote, hang him high by his balls. And he testified, Cruzado testified to that. He put that in an affidavit. He said that this happened. In fact, Cruzado was on the stand in front of the same judge and said, Mr. Cooper told me that you said this, and in no time in the record does the judge say, wait a minute, I never said that. Or does the attorney say, oh, I never told him you said that. They just come, that's just ignored, and the hearing goes on. But the State court never made a determination that it never occurred. The Nevada Supreme Court never made a direct determination that it never occurred. And the Federal District Court never made a determination that it didn't occur. That's a significant facet of coercion, that the judge is telling you that if you don't take this plea and you're found guilty by trial, you're going to suffer severe consequences. And as I said in an interesting case from this Court, a 1993 case, what was said there was that's a special kind of coercion, and we can look behind the defendant's representations there in a canvas that he wasn't threatened, and that's a basis for withdrawing this plea. And that's a unique factor, something you're not going to have in a lot of cases. Another unique factor here is the nature of the victim, the purported victim in this matter, who is an employee of the Metropolitan Police Department. And what we have in this matter, another factual circumstance that has never been really ruled upon by any court, is that Mr. Grisato was subject to coercion, sharp police tactics by both police and by the jail, by the guards in the jail, specifically the brother of the alleged victim who was a guard in the jail. But when did that happen? All before the plea, Your Honor. And the relevance of this is that Mr. Grisato is being subjected by the State, by State actors from the very beginning of this matter to sharp and coercive tactics that would eventually cause a reasonable person to begin to lose faith in the ability of the system to protect him. But you're telling the Court that Mr. Grisato was subject to this coercion for six months, starting in the jail when he's arrested and proceeding through his attorney and then proceeding through the judge. And when he's asked the question in the plea quality, is there any coercion? And he says, no, that we should disregard that. Right. I understand. I freely admit that the plea canvas here is a huge problem for us. And we have to get beyond this canvas. And what my position is, is that when you add up all the factors that were impacting Grisato, including his loss of faith in his attorney, which appears to be objectively reasonable, that he was ready to say and do anything at that time when he made the decision to enter the plea to get that plea through. And that, and it's legitimate that the courts give that plea canvas a great deal of weight. And it is legitimate that we should have a heavy burden of coming forth with enough evidence to get past that barrier. And we are suggesting in this case that we did. And that is truly a unique factor, that this, the victim, the alleged victim's brother was working in the jail and subjecting our client to all kinds of abuse and coercive conditions while he was incarcerated. And that's documented in this record by affidavits from other inmates. And you say it's truly unique. How does that affect, we're reviewing this under AEDPA, aren't we? You're reviewing under what? Standard. Yes. So doesn't that sort of kill your claim right there? If it's that truly unique, how are we supposed to find that this is a clearly erroneous interpretation, application of Supreme Court law? Well, the case law recognizes that even applying the AEDPA standard, that no cases are going to have identical facts. When looking to whether a decision is an unreasonable application of or contrary to, you use governing Supreme Court law as your legal template. Right. And then you plug in the facts of the case and determine. There's always going to have to be some judicial determination whether the court applied the law to the facts in a way that was objectively unreasonable or more than objectively unreasonable. So there's never going to be a case that's directly on point, is what I'm saying. Well, I don't know if there will be never, but we'll set aside that hyperbole. Let's just focus on the characterization of this case is very unique. That does seem to me way against us second-guessing the Nevada Supreme Court. I understand the Court's point. What I would state is that, A, if you look at both the Nevada Supreme Court's opinion, the direct opinion, direct appeal opinion, and the post-conviction appeal, that the Nevada Supreme Court does not carefully analyze the factual issues we're bringing forth here. They make conclusory statements that we don't find ineffective assistance of counsel or that the plea was rendered involuntarily. In fact, one theme of this case is that there are a lot of factual issues that there's never been a clear factual finding by any Nevada court upon. And one of them is, was Cruzado subject to these coercive jailhouse conditions? Did the police hold him for 10 days and subject him to unconstitutional interrogation and unconstitutional manhandling, or not? Did he – was he subjected to this abuse in jail before he entered his plea, or not? Did the judge directly threaten Mr. Cruzado through his attorney, or did that not happen? Did his attorney fail to adequately investigate this case? Now, the Court says he acted in a – that he did not meet the standards for ineffective assistance of counsel, that his performance was not that deficient. But what we have here is both the attorney – the attorney recognizes, and what Cruzado said repeatedly, that he never came to see him, or he only came to see him occasionally. And that he didn't – and what the attorney says is he didn't investigate the case until two weeks before trial. And Mr. Cruzado did not think that was reasonable because he knew or believed that his witnesses would move out of the apartment complex, which appears to have been the case of what happened with one of them. But wasn't the record before the court blow to which we're to give substantial deference under the Anti-Terrorism Provisions, or Act, that he'd been to the jail on at least three occasions, that he'd interviewed every witness that Mr. – or that the defendant identified? I mean, those are specific statements of fact that, if accepted by the court below, would preclude the argument you're making presently. It – I understand, Your Honor. In the context of ineffective assistance of counsel, that is a problem because the Court did hear these allegations in the motion which draw the plea. Now, we also have this added layer of complexity here, where we're saying that the attorney who handled that hearing, which is still a trial-level proceeding assistance before sentencing was imposed – the sentence was imposed, was ineffective by not adequately preparing for that proceeding. So we're arguing that any of the factual findings from that court after that hearing were – are constitutionally suspect because of this added layer of ineffective assistance. But even backing away from that, our first and primary allegation here is that Mr. Cruzado entered the plea involuntarily because of this atmosphere of coercion, because he lost faith in his trial attorney. His trial attorney admits he didn't investigate this matter until 14 days before trial, after 7 months of Cruzado being in custody. In addition, we also know, if you look at this record, that Mr. Cruzado was taken over to the – to have a polygraph test administered upon him by the Clark County Public Defender's Office. Now, what we know about the Clark County Public Defender's Office, especially at this period of time, is that they did that for one reason, and that is as a resource allocation mechanism, that if you failed the polygraph, the office would not put a lot of resources into your case. And at this period of time, in order to get your case investigated, in order to receive a lot of resources from that office, you had to prove, in effect, actual innocence by passing the polygraph. In this case, Cruzado refused to take the polygraph. And this – this Court has already dealt with this issue with the Clark County Public Defender's Office in a case called Miranda. But what we know is that when he failed to pass that polygraph, that there is objective evidence that the Clark County Public Defender's Office at that time would not have put resources into his cases. And that is – actually, the trial attorney's testimony affirms that, because he says, yes, I didn't investigate this case until right before trial. And so – and Mr. Cruzado – and the icing on the cake for Mr. Cruzado was when the attorney gets up and gives the opening statements, and he says something to the effect that Mr. Cruzado didn't know the victim well, when Mr. Cruzado's entire defense was, we had an ongoing relationship. And so when he hears this, after being in jail and being subjected to coercion, after being subjected to coercion by the police, after having the judge tell him that he's going to receive harsh treatment if he's found guilty by a jury, after being told that his wife will be indicted for perjury if she testifies on the stand against him, after she had just given birth to his daughter, that after that – knowing that his attorney only had limited contacts with him and didn't address all his concerns, that Mr. Cruzado at that time entered a plea, which he timely tried to withdraw. He didn't wait months and months and months to withdraw it. He waited – it was six weeks later. He's in court saying, I shouldn't have entered this plea. I want to withdraw it. I want to go to trial. And here's why. And the real decision for this Court was, is the district court's decision and the Nevada Supreme Court's affirmance of that decision objectively and reasonable, given everything about this case that we knew now and what was – what was elicited at that hearing. And I would submit that given all these extra facts that were in play, that this plea was coerced, the Court should have allowed him to withdraw it, this plea, and go to trial. And at that time, it would have been in a timely fashion. And I'd like to reserve my last minute, 30 or so, for rebuttal if I may. If it pleases the Court, my name is David Neidert. I'm a Deputy Attorney General for the state of Nevada. A lot of the argument we just heard was reminding me of the famous Sherlock Holmes story. The story where the dog that didn't bark ended up proving the case because something didn't happen that should have. And we heard a lot of argument, well, this happened, and this happened, and this happened, and this happened, and we don't – we don't – we don't know, we don't know. But what we do know is this. We do know that there was a plea canvas in which Mr. Cruzado was specifically asked by the judge, are you being coerced? And he said, no. We asked – he was asked what, quite frankly, is almost an extraordinary plea canvas. I've seen very few plea canvases in the federal habeas corpus context as extensive as the one that the trial judge did in this case. Then he files a motion to withdraw his plea, and he's claiming, well, there might have been this, there might have been that. But he prepared an affidavit. It's contained within the record. It's at pages 151 through pages 154 of the excerpt of the record. He and his attorney signed – he signed this affidavit after he entered his plea as part of his motion to withdraw his plea. And does he mention coercive jail environment? No. Does he mention – does he mention that he feels like the judge forced him to plead because the judge was involved? No. The only thing he says in this that indicates any kind of coercion is in his first paragraph where he talks about – excuse me, not the first paragraph, that – the second paragraph that he believes that his wife would be prosecuted for perjury if she testified. All of the other arguments that Mr. Carr made today, you would have thought, on the record, would have been part of this affidavit. And they were not. What we have in this case – what do you make of the argument that the judge threatened his counsel in Chambers? I think if you – if the judge had threatened him saying, unless you take this plea agreement, I'm going to impose an extraordinarily harsh sentence, that's probably coercive. He testifies. That's what the judge tells his counsel. And as far as I can tell, it is uncontradicted in the record. So what do we make of that? We make of that is that there's – there was not certainly an issue that was explored at the evidentiary hearing. It was certainly not – it was certainly not anything his attorney even asked about that increased – Ms. Teague made the record with respect to. And it certainly contradicts his own statements in the plea canvas. In the plea canvas, are you – were you coerced? Right. But – counsel, go ahead. Well, if he believes this judge has threatened him, what's he going to say? Yes, you're coercing me, Your Honor. Mr. Cruzado is not afraid to say what – speak his mind. That's obvious throughout the record. And the record is pretty clear that Mr. Cruzado is a game player. I mean, that's really, really rather clear from the fact that he waives his preliminary hearing and then he wants to go back because he thought – because he made an agreement at the time of the preliminary hearing and then he changed his mind. So then he wants to go back for a preliminary hearing. So now he starts – now we're – and then the judge says, no, I'm not going to allow you to remand for prelim. We're going to have a trial. And then after the first witness is called, Mr. Cruzado realizes that, in fact, people really are going to testify against him. And then he's willing to plead because that stops the trial. So now the trial's stopped. The jury's gone. Oops, I changed my mind again. That's the pattern that we have from the record with respect to what Mr. Cruzado did, is that he was playing games trying to avoid having some sort of ultimate conclusion. He figured, I can do this now and then do something else. And that's – and that's happened. No one can take that – the record and accept your characterization of it. But if – we're looking at this in habeas. So if he proves that the judge made coercive statements in chambers and those were related to him, why is that enough to at least require an evidentiary hearing on that? Well, I don't believe it's proven. I think there was certainly no indication from Marcus Cooper's testimony at the evidentiary hearing that was not – wasn't an issue that was explored at the evidentiary hearing. No, I mean, nobody talked about it except for the defendant. But nobody rebutted it. It's just lying out there. But he didn't even testify to it at the evidentiary hearing. It just – and the – I don't believe there's any testimony with respect to the coercion at the evidentiary hearing. Well, he's saying you better take this deal because the way he described it, we allegedly had sex. It would be a hard time convincing the jury. If they find me guilty, he's going to hang me high by the balls. That's what he says in his testimony. That's what he says the judge said to his attorney in chambers. So if that's true, is that enough to require an evidentiary hearing? I don't think so. I think, once again, we have – I think we're looking at the record of the case, the extensive canvas that – he's made an allegation. I think it might have been – should have perhaps have been handled just slightly better at the time of that evidentiary – yes, but it was an issue that was certainly not hanging out there for the Nevada Supreme Court when they looked at it not once but twice. This issue was litigated twice, first at the – on the direct appeal and then second on the post-conviction. And the question for this court in habeas corpus is, was the decisions – decisions, plural – from the Nevada Supreme Court objectively unreasonable? And that – I think the answer to that is no. That the Nevada Supreme Court's decisions based on the record that was developed in the state court is objectively reasonable. Now, I mean, you hear the strength of this colloquy, and you have a lot of – I think the petitioner has a lot of difficulty establishing a nexus between the things that happened to him and coercion, or at least his decision. But he does have this, and he does have the fact that there's a threat as to his wife on the perjury count, her to be accused of perjury. And that seems to me to be the toughest thing that you have to overcome at this point. Well, I guess that if you – if those are certain things – but – If you had a finding on that, on the judicial coercion by the Nevada Supreme Court, then I think you'd have a, you know, very, very compelling case that that's something we had to defer to. But we don't have any findings on that one way or another. And it may well be that that's – that issue was – it was insufficiently preserved. But it's one that's a bit troubling, particularly in the context of – as the broader context of the – what was happening in Clark County at that time, which we've heard in other cases. Well, and with respect to the other cases, the other testimony we had with that is – and that also stands unto contradiction. Marcus Cooper testified that he was the most experienced defense attorney, or one of the most experienced defense attorneys in Clark County at that point in time. This wasn't some rookie fresh out of law school that was representing Mr. Cruzado. Mr. Cooper's testimony was that he couldn't think of 10 other attorneys in Clark County, Nevada, who had more jury trial experience than he did. So, to say that, you know, that – well, he took – there's a polygraph that – and somehow that didn't mean there were resources. The record is really clear that they assigned one of their top defense attorneys to represent him. And that stands unrebutted. So, I guess my thing is, if you look at the record, that the – there was a good plea colloquy. Particularly the wife's coercion issue, putting aside whether you're going to say directly to the judge, yeah, judge, you told me that I had to plead guilty. If there's a problem with the wife, you'd expect him to say something about that, and he didn't at the time of the plea colloquy. But what you have is – like I said, you have this man, he's asked these questions, do you – are you – is anybody coercing you? Did you go over this? And he's saying, he's saying no, no, no, no, no. Then he gives us – then he gives a version of events that's directly contradicted by his trial attorney, Mr. Cooper, at the evidentiary hearing. Obviously, and I think it's quite – you know, that there's no other rational reason that the judge basically said, I find you, Mr. Cooper – although the words were not said. Mr. Cooper's credible. Mr. Cruzado is not credible. I think there was a clear credibility determination made at that point in time as to who was credible. So you have a person who's given a totally incredible version of events, and now you're saying, well, there's one little area that – and a string of incredible claims that he's made, that even though the judge found no credibility, there's no indication of anything he's saying being credible based – compared side by side with what Mr. Cooper said. To now say that, well, now, because this one little area wasn't specifically addressed, we should now have an evidentiary hearing, even though everything else he said was totally incredible, I think that – I don't think that's appropriate. I think that in this – in the larger scheme of things, it goes towards the deference that the decision of the Supreme Court and the deference that this Court owes to it. Any further questions? No. Thank you, counsel. On that basis, Your Honor, I'd ask that this Court affirm the order of the district court in its entirety. Your Honor, my client's affidavit on page 154A specifically makes the allegation of the judge hanging him comment. And it's also in his evidentiary hearing transcript on page about how Cooper told him that his witness would be indicted for perjury, and he also testifies about the coercive conditions he felt in custody at the evidentiary hearing on pages 125 and 126. And one of the chief allegations that we make in this is that we question whether epideference applies to this case, because the Nevada Supreme Court's direct appeal decision is not responsive to the arguments made. And I don't have the opening briefs here on is that they are very detailed and comprehensive about the factual allegations made, that the opening briefs made allegations about judicial coercion, about the wife being threatened for perjury, and about all the other factors we've talked about here today, and that the Nevada Supreme Court opinion, which is in the excerpts, does not address those factual allegations, does not confirm or deny them or even deal with them in any responsible fashion. There are a lot of factual unknowns that are still hanging out in this case, factual unknowns that are important to a cogent determination of this case. And we ask repeatedly in the Federal District Court for an evidentiary hearing to try to prove up these allegations or at least find out once and for all whether they're true or not. And what we would ask this Court to do is to reverse this matter for an evidentiary hearing where Cruzado could prove up or not prove up allegations, the specific allegations of coercion and the involuntariness of this plea. Thank you. Thank you, counsel. The case, you've heard, will be submitted. We'll be in recess this morning and resume this afternoon at 2 o'clock in courtroom number four. Thank you.
judges: Thomas, Fisher, Robart